**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHARLOTTE WALTERS | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:07-cv-01124 (JCH) |
| | : | |
| v. | : | |
| | : | |
| HOWMEDICA OSTEONICS | : | |
| CORPORATION a/k/a STRYKER | : | DECEMBER 14, 2009 |
| ORTHOPAEDICS, STRYKER | : | |
| INSTRUMENTS | : | |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 81]**

**I.      INTRODUCTION**

Plaintiff Charlotte Walters, a surgical technician, initiated this action in state court against Howmedica Osteonics Corporation, a/k/a Stryker Orthopaedics and Stryker Instruments ("Howmedica").  The defendant removed the action to this court pursuant to sections 1441 and 1446 of Title 28 of the United States Code.  [Doc. No. 1].

Walters asserts a product liability claim under the Connecticut Product Liability Act ("CPLA"), CONN. GEN. STAT. § 52-572n(a), for injuries allegedly sustained after lifting a surgical instrument tray allegedly made by Howmedica while working in the operating room of Waterbury Hospital on July 1, 2005.  Howmedica has moved for summary judgment on Walters' claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. No. 81].

**II.     STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to

judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Generally, when assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## III.    FACTUAL BACKGROUND[1]

Charlotte Walters is a surgical technician at Waterbury Hospital.  See Defendant's Local Rule 56(a)(1) Statement ("L. R. 56(a)(1) Stmt.") at ¶ 1.  She began

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties and supported by evidence as true, and resolves disputed facts in favor of the party against whom the motion under consideration is made.  Although Walters filed a Statement of Undisputed Material Facts pursuant to Local Rule 56(a)(2) (albeit she refers to Local Rule 56(a)(1)), she did not state in separately numbered paragraphs "corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied," nor did she provide in a separate section "a list of each issue of material fact as to which it is contended there is a genuine issue to be tried."  L. R. 56(a).  We therefore accept as true those statements of undisputed material facts made in Howmedica's 56(a)(1) Statement.  Despite the failure of Walters' counsel to properly draft the mandatory 56(a)(2) Statement, the court will nonetheless address the legal matters presented by the Motion for Summary Judgment.

working there in 1975, and as of July 2005 had worked there for twenty years.  Id.  As a surgical technician, Walters' duties include frequent and repetitive physical exertion, including lifting and moving patients and surgical trays (also called surgical pans).  Id. at ¶ 2.

Howmedica supplies Waterbury Hospital with surgical trays.  Id. at ¶ 5. Howmedica either loans trays to the hospital for particular surgeries or delivers trays in advance of surgery for the hospital to hold on consignment.  Id.  Waterbury hospital has a policy stating that surgical pans shall not exceed twenty pounds.  See Plaintiff's Local Rule 56(a)(2) Statement ("L. R. 56(a)(2) Stmt.") at ¶ 1.  There is a dispute as to whether this policy was communicated to any representative of Howmedica.  Compare Plaintiff's Opposition to Motion for Summary Judgment ("Pl.'s Opp. to Mot. for Summ. Judg.") [Doc. No. 84], Exh. B (document stating Waterbury Hospital's weight policy that is signed by Matt Allison, a representative of Stryker instruments) with Hudson Dep. at 38; Blouin Dep. at 51 (testimony asserting that Howmedica is a distinct entity from Stryker Instruments, that Robert Blouin was Howmedica's sole representative to Waterbury Hospital, and that the weight policy was never conveyed to Mr. Blouin).

On July 1, 2005, Walters was covering a portion of a surgery for the partial revision of an acetabular component of an artificial hip.  L. R. 56(a)(1) Stmt. at ¶¶ 10, 11.  One of Walters' tasks for preparing for surgery was to lift instrument trays from a waist-high table and move them to another waist-high table where the surgeon could more easily access the instruments.  Id.  Walters was aware that certain types of surgeries, including orthopedic surgeries, are especially labor intensive because they usually involve more instruments and heavier instrument trays.  Id. at ¶ 3.  For the July

-3-

1, 2005 surgery, fourteen instrument trays in all were used, eleven of which were Howmedica trays that Waterbury Hospital held on consignment.  Id. at ¶¶ 5, 13.  The remaining trays were owned by the hospital.  Id. at ¶ 13.

Walters began her work by transferring a general instrument hospital-owned tray, which felt very light.  Id. at ¶ 17.  Walters then proceeded to lift the Howmedica trays.  After lifting "one or two" of such trays, and while in the process of lifting another, Walters felt a pain in her neck and shoulder.  Id.  After feeling pain, Walters continued to transfer the remaining trays.  Id.  Walters alleges that she has sustained numerous injuries as a result of the incident that continue to afflict her.  See Plaintiff's Complaint ("Cmplt.") [Doc. No. 1 at Exh. A].  None of the trays were weighed.  L. R. 56(a)(1) Stmt. at ¶ 18.

Walters is unable to identify the specific instrument tray that she was handling when she was injured.  Id.  Walters did not personally weigh any of the trays, and no one from Waterbury hospital knew the weight of any of the trays used for the surgery.  Id. at ¶¶ 18-19.

IV.   DISCUSSION

In her Complaint, Walters brings several counts against Howmedica under the CPLA.  See Cmplt.  In the First Count, Walters brings a strict liability claim under the CPLA in which she alleges that the Howmedica trays in question were manufactured with a design defect; she further alleges that this defect caused her injuries.  Id. at 1-5.  In the Second Count, Walters alleges that Howmedica acted negligently in manufacturing, failing to inspect, and delivering medical trays that exceeded the weight limit policy of Waterbury Hospital, and that Howmedica's negligence caused Walters'

injuries.  Id. at 5-10.  In the Third Count, Walters alleges that Howmedica acted with reckless disregard for the safety of consumers, and she seeks punitive damages and attorney's fees.  Id. at 10-11.  Throughout these counts, Walters also alludes to a breach of warranty claim against Howmedica.  See, e.g., id. at 4.  Howmedica has moved for summary judgment of each of these counts.  See Defendant's Mot. for Summary Judgment ("Def't's Mot. for Summ. Judg.") [Doc. No. 81].

      A.    Product Liability Claims under the CPLA

The court will address each of these counts individually even though the CPLA creates the "exclusive remedy for claims falling within its scope."  Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 471 (1989).  Although the CPLA provides the exclusive remedy for plaintiffs with product liability claims, the CPLA was "not meant to alter the substance of a plaintiff's rights or the facts that a plaintiff must prove in order to prevail."  LaMontagne v. E.I. Du Pont De Nemours & Co., Inc., 41 F.3d 846, 855 (2d Cir. 1994) (LaMontagne II).  The CPLA does not preempt all common law theories of product liability; rather, "the CPLA bars separate common law causes of action in product liability cases."  Densberger v. United Technologies Corp., 297 F.3d 66, 70 (2d Cir. 2002).  As such, the CPLA "retains the plaintiff's right to allege the traditional theories of recovery along with the statutory basis for recovery under one unified count denominated as a product liability claim."  Lamontagne v. E.I. Du Pont de Nemours & Co., Inc., 834 F. Supp. 576, 587 (D. Conn. 1993) (LaMontagne I).  In other words, while Walters brings one cause of action under the CPLA, that single cause of action includes the different grounds for relief that Walters asserts, namely, (1) strict liability, (2) negligence, (3) breach of warranty, and (4) a claim for punitive damages.  Each of

these sub-claims must be addressed independently even though Walters brings one single CPLA claim.

Furthermore, while Walters' claims exist within the CPLA framework, those claims retain their character as they existed at common law.  The enactment of the CPLA did not displace common law theories of liability.  The CPLA defines a product liability claim as including, but not limited to, "all actions based on the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." CONN. GEN. STAT. § 52-572m(b).  "This definition incorporates the common law theories of liability; it does not abolish them." Robert B. Adelman & Mary Ann Connors, The Legal Framework of a Products Liability Case in Connecticut, 67 CONN. B.J. 355, 359 (1993).  In analyzing Walters' claims, then, the court must "look first [to] the CPLA and -- where that statute is silent -- [it must] look to Connecticut common law for guidance." Lamontange I, 834 F. Supp. at 588.  See also LaMontange II, 41 F.3d at 855 (stating that "[a]lthough the CPLA introduced simplified pleading . . . it apparently was not meant to alter the substance of a plaintiff's rights or the facts that a plaintiff must prove in order to prevail").

      B.    Walters' Strict Liability Claim Under the CPLA

In her Complaint, Walters alleges that Howmedica "designed, distributed and sold the products in a defective condition unreasonably dangerous to the plaintiff."  Cmplt. at 3.  The CPLA recognizes an action grounded in strict liability for a product defect.  See CONN. GEN. STAT. § 52-572n.  Connecticut courts have adopted the strict liability test established at § 402A of the Restatement (Second) of Torts.  Potter v. Chicago

Pneumatic Tool Co., 241 Conn. 199, 214 (1997).  Section 402A imposes liability only

when the product is unreasonably dangerous to "the ordinary consumer who purchases

it, with the ordinary knowledge common to the community as to its characteristics."  Id. at

211 (quoting 2 Restatement (Second) Torts § 402A, comment (i)).  "Under this

formulation, known as the 'consumer expectation' test, a manufacturer is strictly liable

for any condition not contemplated by the ultimate consumer that will be unreasonably

dangerous to the consumer."  Id. at 212.

Howmedica argues that, under Connecticut law, summary judgment should be

granted as to Walters' strict liability claim because Walters has offered no evidence that

creates a genuine issue of material fact as to whether there existed a design or

manufacturing defect that rendered the Howmedica surgical tray "unreasonably

dangerous."  See Def't's Mot. for Summ. Judg. at 9-14.  To support this position,

Howmedica offers the expert opinion of Dr. Jorge Ochoa, a biomechanical engineer.

See Report of Dr. Jorge Ochoa, Def't's Mot. for Summ. Judg., Exh. E ("Ochoa Report").

Dr. Ochoa's Report catalogues the numerous concerns that must be considered in

designing a surgical tray.  Id. at 4-6.  Dr. Ochoa asserts that, because "delivery trays

contain instruments laid out in an optimum, systematic manner to accomplish a surgical

procedure, the number of instruments and total weight of the loaded tray is ultimately

based on the shape, size and density of individual instruments and their distribution

within the tray."  Id. at 5-6.  It is Dr. Ochoa's opinion that Howmedica properly

contemplated these factors and developed an appropriate design for all of its surgical

trays:

During the design/process validation activities, the [Stryker] Trident

Acetabular and Cutting Edge Express/Advantage instrument trays were weighed in their fully assembled configurations in order to calculate their bulk density, the parameter utilized to establish equivalency to the documented sterilization validation process for steam steriliization of reusable instruments at Stryker Orthopaedics.  Review of sterilization process validation documentation reveals that all Trident Acetabular and Cutting Edge Express/Advantage fully loaded instrument trays weighed less than 22 pounds, and were found to be adequately sterilizable following Stryker Orthopaedics' recommended procedures.  The delivery trays provide instrument-designated content locations that allow for even weight distribution and efficient operative and perioperative deployment.

Id. at 6.  Moreover, Dr. Ochoa has concluded that, "based on the review of design records, operative and perioperative notes, and my experience in the design of orthopaedic surgical implants and instruments, it is my opinion that the Stryker [instruments] and related tray delivery systems meet their intended design, regulatory and customer requirements, provide end user and patient safety, and are not defective." Id. at 8.

Although Dr. Ochoa's Report provides an assessment of Howmedica trays in general and not an assessment of a specific tray that allegedly caused Walters' injuries, this is in no way due to the fault of Howmedica.  Walters is unable to identify the specific instrument tray that allegedly caused her injury, did not seek to set that tray aside after it caused her injury, and cannot recall the types of instruments contained on the tray.  L. R. 56(a)(1) Stmt. at ¶ 18.  Given that Walters' Complaint only alleges that an unidentified Howmedica tray caused her injuries, Dr. Ochoa's conclusion that all Howmedica trays are generally not defective is sufficient to fulfill Howmedica's burden of demonstrating that there are no genuine issues of material fact in dispute with respect to the strict liability component of the CPLA claim.  See Liberty Lobby, Inc., 477 U.S. at 242.  Walters must therefore "set forth specific facts showing that there is a genuine issue for trial."  Id.

at 255.

Walters does not provide any evidence of her own to establish that the tray in question was "unreasonably dangerous."[2]  In fact, Walters fails to address that claim in her Opposition to Howmedica's Summary Judgment Motion, and admitted at oral argument that she can likely only maintain a claim for negligence.  <u>See</u> Pl.'s Opp. to Mot. for Summary Judgment [Doc. No. 84].  A litigant opposing summary judgment "'may not rest upon mere conclusory allegations or denials as a vehicle for obtaining trial.'"  <u>Quinn v. Syracuse Model Neighborhood Corp.</u>, 613 F.2d 438, 445 (2d Cir. 1980) (citation omitted).  Putting forth expert testimony or evidence of some kind to establish a genuine issue of material fact is especially important when, as is the case here, the plaintiff attempts to assert a design defect claim.  <u>See</u> <u>Lisella v. Ford Motor Co.</u>, No. 97-cv-2001, 1999 U.S. Dist. Lexis 23321, at *7-8 (D. Conn. Oct. 26, 1999) ("[I]n products liability cases. . . 'where the issue concerns a product's design. . . it would seem that expert opinion is the only available method to establish defectiveness, at least where the design is not patently defective'") (citation omitted).

The Supreme Court of Connecticut has "long held that in order to prevail in a design defect claim, '[t]he plaintiff must prove that the product is unreasonably dangerous.'" <u>Potter</u>, 241 Conn. at 214 (citation omitted).  On account of Walters' failure to proffer any testimony that would allow a jury to conclude that the Howmedica tray was "unreasonably dangerous," there is no material issue of fact, and Howmedica is entitled to summary judgment as to Walters' strict liability claim under the CPLA.  <u>See</u> <u>Graham</u>,

---

[2]  Nor does Walters identify any genuine issues of material fact as to her strict liability claim as required by Local Rule 56(a).  <u>See</u> L. R. 56(a)(2) Stmt.

230 F.3d at 38.

      C.      <u>Walters' Negligence Claim Under the CPLA</u>

In the Second Count of her Complaint, Walters alleges that her "injuries and consequential losses were the result of the carelessness and negligence of the defendant, its agents, servants and/or employees. . . in that [the defendant] was negligent and careless in the distribution and sale of the surgical pans and that it failed to properly supply the Waterbury Hospital with the appropriate weight surgical pans." Cmplt. at 7-8.  To maintain her claim for negligence, Walters must establish: (1) duty; (2) breach of that duty; (3) causation; and (4) actual injury.  <u>Angiolillo v. Buckmiller</u>, 102 Conn. App. 697, 711 (Conn. App. Ct. 2007).  "'If a plaintiff cannot prove all of those elements, the cause of action fails.'"  <u>Id.</u> (citations omitted).

Before addressing the merits of Walters' negligence claim, it is first necessary to consider Howmedica's contention that the negligence claim "must be dismissed because negligence is subsumed within Plaintiff's products liability cause of action and may not be brought as a separate cause of action."  Def't's Mot. for Summ. Judg. at 17.  Walters' negligence claim should not be dismissed, nor should Howmedica prevail on summary judgment, solely on the basis that the claim is preempted by the CPLA.  The CPLA creates a consolidated cause of action for all product liability claims, which "shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product."  CONN. GEN.STAT. § 52-572n(a). However, as noted in greater detail in Part IV A, <u>supra</u>, though the CPLA creates the "exclusive remedy for claims falling within its scope," <u>Winslow v. Lewis-Shepard, Inc.</u>, 212 Conn. 462, 471 (1989), the CPLA "retains the plaintiff's right to allege the traditional

*theories* of recovery along with the statutory basis for recovery under one unified count denominated as a product liability claim," LaMontagne I, 834 F. Supp. at 587 (emphasis added).  Walters brings one action under the CPLA; within that action she may bring sub-claims for strict liability, negligence, or breach of warranty.  See supra at 4-5. Therefore, although Walters pled her negligence claim as a separate count in her Complaint, the court treats Walters' claim as a single CPLA cause of action with multiple theories.  Howmedica's contention that Walters' negligence claim must be dismissed because it violates the fact that the CPLA is the "exclusive remedy" for a plaintiff is unsupported by the case law under the CPLA.

    1.  Duty and Breach

   In its Motion for Summary Judgment, Howmedica argues that Walters has not established a genuine issue of material fact as to whether Howmedica breached a duty it owed to Walters.  See Def't's Mot. for Summ. Judg. at 9-14.  As discussed in Part IV B, supra, Howmedica has offered the expert opinion of Dr. Ochoa in which he opines that numerous factors must be considered in designing effective surgical trays.  See Ochoa Report at 4-5.  Howmedica contends that any standard of care that it owed to Walters would have to be established with these factors in mind by an expert familiar with the surgical tray design process.  See Def't's Mot. for Summ. Judg. at 13-14.  Because Walters has not come forward with any evidence to establish such a standard of care, Howmedica argues it is entitled to judgment as a matter of law.  Furthermore, Howmedica notes that Dr. Ochoa concluded that Howmedica's trays are not unreasonably heavy and "provide end user and patient safety."  Ochoa Report at 8. Howmedica also contends, therefore, that even if Walters had properly established a

standard of care for her negligence claim, she has offered no evidence to contradict Dr.

Ochoa's testimony and support the conclusion that Howmedica exceeded that standard.

The court agrees that Walters has not sufficiently demonstrated the proper

standard of care.  As Dr. Ochoa's Report makes patently clear, the design and

construction of surgical trays is a complex process that requires the consideration of a

substantial number of variables.  "If the determination of the standard of care requires

knowledge that is beyond the experience of an ordinary fact finder, expert testimony will

be required."  Santopietro v. City of New Haven, 239 Conn. 207, 226 (1996).  In

Santopietro, the Supreme Court of Connecticut required expert testimony to establish

the standard of care in a suit in negligence against a baseball umpire because "the

umpire possesses knowledge of the standard of care to which an umpire reasonably

may be held, and of what constitutes a violation of that standard, that is beyond the

experience and ken of the ordinary fact finder."  Id. at 227.  Similarly, Dr. Ochoa's Report

establishes that the standard of care that the designer and manufacturer of surgical

trays must follow lay beyond the "experience and ken of the ordinary fact finder."  Id.

Just as the Santopietro Court determined that the breach of such a duty "must be

proved. . . by expert testimony," so too does this court determine that expert testimony is

required in this case.

Walters provides no such evidence, however.  Walters alleges that the deposition

of Rob Blouin proves that Howmedica received notice of Howmedica's twenty-pound

weight-limit policy for surgical trays.  See Opposition at 2.  Because the twenty-pound

policy was "effectively communicated," Walters contends that Howmedica should be

held accountable to abide by this policy.  Id.

-12-

There are real disputes as to whether Howmedica did, in fact, have notice of Waterbury Hospital's weight-limit policy.[3]  The court must resolve all ambiguities and draw all inferences in favor of Walters, the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255.  For the purpose of determining whether Howmedica is entitled to judgment as a matter of law, the court therefore assumes  arguendo that Howmedica had notice of Waterbury Hospital's weight-limit policy.

Nonetheless, even if the court makes that assumption, the fact that Howmedica agreed to comply with the weight-limit policy is insufficient to create a material issue of fact as to her negligence claim.  Howmedica's alleged failure to abide by Waterbury Hospital's weight-limit policy may give rise to an action in contract by Waterbury Hospital, but it does not give rise to an action in tort by Walters.  Although under Connecticut law a "party may be liable in negligence for the breach of a duty which arises out of a contractual relationship," Johnson v. Flammia, 169 Conn. 491, 496 (1975), the plaintiff must still be able to allege "facts and damages sufficient to maintain those causes of action separately," Bonan v. Goldring Home Inspections, Inc., 68 Conn. App. 862, 872 n.7 (Conn. App. Ct. 2002).

Walters attempts to maintain a cause of action for negligence only by showing

---

[3] Despite defense counsel's erroneous assertion that there is no support for the allegation that Howmedica had notice of the weight limit policy, the record demonstrates that there is a genuine issue of material fact with respect to this issue.  Walters provides a document that states the policy and is signed by Matt Allison, a representative of Stryker Instruments.  See Opposition, Exh. B at Bates No. Waterbury 00019.  Walters also provides the business card of Rob Blouin, Howmedica's representative to Waterbury Hospital, which lists "Stryker Howmedica Osteonics" as Mr. Blouin's employer.  See id. at unmarked last page. Howmedica responds by claiming that Mr. Blouin was Howmedica's only representative to Waterbury Hosptial, and that Waterbury Hospital had never communicated the weight-limit policy to Mr. Blouin.  See Defendant's Reply Mem. [Doc. No. 86] at 7 (citing Hudson Dep. at 38; Blouin Dep. at 51).

that Howmedica violated its agreement with Waterbury Hospital not to provide trays that exceed twenty pounds.  Yet under Connecticut law, this is insufficient to sustain a negligence claim.  "To establish a negligence claim a plaintiff must allege that the defendant owes some duty imposed by law, i.e., a duty other than imposed by the parties' contract."  State v. Maximus, Inc., No. HHDCV075015239S, 2008 WL 2447423 at *2 (Conn. Super. Ct. June 4, 2008) (striking a claim for negligence because no duty existed at law beyond the duty to properly perform the contract, and violation of that duty resulted only in "violation of the contract"); see also Gazo v. City of Stamford, 255 Conn. 245, 263 (2001) ("An action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law."); Factory Mutual Insurance Co. v. Pike Co., Inc., No. 3:08-cv-01775, 2009 WL 1939799 at *3 (D. Conn. 2009) (dismissing negligence claim because complaint failed to present factual allegations to "distinguish the negligence claim from the breach of contract claim").

Walters has failed to provide necessary expert testimony on what constitutes the proper standard of care for a surgical tray designer and manufacturer.  Under Connecticut law, Walters cannot correct that failure by averring that Howmedica breached its agreement with Waterbury Hospital not to deliver trays that weigh in excess of twenty pounds.  Because Howmedica has established that there are no genuine issues of material fact as to whether Howmedica breached any duty of care to Walters and because Walters has not "set forth specific facts showing there is a genuine issue for trial," the court grants summary judgment to Howmedica on the negligence claim. Anderson, 477 U.S. at 255.

2.      Causation

-14-

Howmedica also argues that summary judgment of the negligence claim should be granted because Walters has failed to establish that there are genuine issues of material fact with respect to causation.  See Defendant's Mot. for Summary Judgment at 14-17.  "An essential element of any negligence action is the establishment of the defendant's conduct as a proximate cause of the plaintiff's injury. . . . The causal relation between the defendant's wrongful conduct and the plaintiff's injuries must be established in order for the plaintiff to recover damages."  Wu v. Town of Fairfield, 204 Conn. 435, 438 (1987) (internal quotation omitted).  The existence of the proximate cause "is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . This causal connection must be based upon more than conjecture and surmise."  Paige v. Saint Andrew's Roman Catholic Church Corp., 250 Conn. 14, 26 (1999).

Howmedica presents two arguments that support granting summary judgment on the basis that Walters has not sufficiently demonstrated causation.  First, Howmedica argues that testimony from an expert with specialized medical knowledge is necessary to prove causation in cases where the plaintiff alleges that physical injury resulted from a defendant's conduct; because Walters has not provided such testimony, her negligence claim fails.  See Defendant's Mot. for Summary Judgment at 15.  Second, Howmedica argues that, even if Walters demonstrated that the surgical tray caused her physical injuries, she has offered no evidence that the *excess weight* of the surgical tray caused those injuries.  Id.

Walters contends that "[e]xpert testimony should not be required to substantiate causation when it occurs during a specific event and the injury can immediately be

-15-

attributed to a specific action," yet she provides no legal authority for that proposition.

Opposition at 8.  In support of her claim that the surgical trays caused her injury, Walters

offers the testimony of her co-worker, Arlene Hudson, who noticed a "pain on the face"

of Walters and heard Walters complain of a pain in her arm, neck, and shoulder area

"immediately upon [Walters] lifting the pan."  L. R. 56(a)(2) Stmt. at ¶ 1.[4]  No other

evidence regarding causation is put forward by the plaintiff.

Under certain circumstances, the Supreme Court of Connecticut "has held that

expert testimony is required to establish causation."  Asipazu v. Orgera, 205 Conn. 623,

630 (1987).  Expert testimony is generally required in cases where the plaintiff alleges

that defendant's conduct caused physical injuries, because the cause of physical injuries

is difficult to discern without such expert testimony.  See Collette v. Collete, 177 Conn.

465, 471 (1979) ("[T]he medical effect upon the human system of the infliction of

injuries, is generally not within the sphere of the common knowledge of a lay witness

. . . .").  Nonetheless, even in a case involving physical injuries, expert testimony may

"not be necessary to establish causation if the plaintiff's evidence creates a probability

so strong that a jury can form a reasonable belief without the aid of any expert opinion."

Asipazu, 205 Conn. at 631.

In this case, the nature of Walters' claim requires the use of expert testimony to

demonstrate causation.  Walters alleges that the excessive weight of Howmedica's

---

[4] The court cites to Walters' Statement of Undisputed Material Facts and not the deposition itself because, while Walters attached portions of the Hudson deposition to her Opposition as Exhibit A, Walters did not attach the portion of the deposition that contained this testimony (p. 26).  Notwithstanding this failure to present this evidence to the court, for purposes of resolving the Motion for Summary Judgment, the court will assume that the deposition contains the content that Walters alleges it contains in her Statement of Undisputed Material Facts.

surgical tray caused shoulder, neck, and spine injuries.  <u>See</u> Cmplt at 5, 8-9.

Ascertaining the source of these complex injuries is a task that exceeds the "sphere of

the common knowledge of a lay witness." <u>Collette</u>, 177 Conn. at 471.  This case does

not resemble those Connecticut cases in which courts have held that the need for expert

testimony depreciates if the plaintiff is testifying as to her own condition.  <u>See, e.g.</u>, <u>State</u>

<u>v. Orsini</u>, 155 Conn. 367, 372 (determining that expert testimony is not required to

establish pregnancy because the "state of pregnancy is such a common condition that a

woman may give her opinion that she herself is pregnant").

       While it seems to the court that, under Connecticut law, Walters should provide

expert testimony as to causation to support her claim, Walters has not done so and

cannot do so in the future.  The court has precluded Walters from calling any experts or

offering expert opinions on the issue of causation because Walters failed to properly

follow discovery rules.  <u>See</u> Ruling Granting Motion to Preclude Certain Expert Opinions

(Fitzsimmons, MJ.) [Doc. No. 77].  Due to this lack of expert testimony, Walters has not

come forward with the evidence necessary to create a material issue of fact in this case

as to her negligence claim with respect to the element of causation.  Although the court

acknowledges that this issue presents a close question under Connecticut law, it

appears that this provides another basis on which it is appropriate to grant Howmedica's

Motion for Summary Judgment as to the negligence basis for her CPLA claim in addition

to the first basis articulated in Part IV. C. 1, <u>supra</u>, that Walters failed to demonstrate

that Howmedica has breached any duty of care.

       D.    <u>Walters' Breach of Warranty Claim</u>

       In her Complaint, Walters alleges that Howmedica "breached the statutory

warranty and merchantability in supplying said surgical pans which were not fit for the ordinary purposes for which they were sold" and that Howmedica "breached the aforesaid implied warranties and that the surgical pans were not of merchantable quality, fit or safe for the purposes for which they were distributed and sold to the Plaintiff." Complaint at 3-4.  Walters may bring this action for breach of warranty under the CPLA. CONN. GEN. STAT. § 52-572m(b).  Because the CPLA is silent as to the elements of a cause of action for breach of warranty, Walters may rely – and in fact seems to rely – on another statutory source: the Connecticut Uniform Commercial Code, Title 42a of the Connecticut General Statutes ("CUCC").

The CUCC defines implied warranties in two provisions.  Connecticut General Statute section 42a-2-315 provides: "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 42a-2-316 an implied warranty that the goods shall be fit for such purpose." CONN. GEN. STAT. § 42a-2-315.  Furthermore, Connecticut General Statute section 42a-2-314 provides: "[u]nless excluded or modified as provided by section 42a-2-316, a warranty that the goods shall be merchantable is implied in a contract with respect to goods of that kind."  CONN. GEN. STAT. § 42a-2-314. This implied warranty of merchantability "acts as a guarantee by the seller that his goods are fit for the ordinary purposes for which they are to be used and will pass in the trade without objections."  Blockhead, Inc. v. Plastic Forming Co ., Inc., 402 F. Supp. 1017, 1025 (D. Conn. 1975).

Howmedica appropriately argues that Walters has failed to demonstrate that the

surgical trays delivered to Waterbury Hospital were unfit for either their known or ordinary purposes under sections 42a-2-314 and 42a-2-315 of the CUCC.  As explained in greater detail in Part IV. B., supra, Walters has offered no evidence to support the conclusion that the surgical tray in question was in any way defective or unfit for its ordinary or known use.

Furthermore, within a claim for breach of implied warranty, the plaintiff has the burden of proving causation.  See § CONN. GEN. STAT. 52-572n(a) (setting forth product liability claims under CPLA "for harm caused by a product"); Blockhead, Inc., 402 F. Supp. at 1024 ("In a breach of warranty action, a plaintiff may recover only after demonstrating that a warranty existed, that defendant breached the warranty, and that the breach was the proximate cause of the loss sustained.").  As described in greater detail in Part IV. C. 2, supra, Walters has not come forward with a material issue of fact as to the element of causation.

Walters does not provide any evidence to establish that the tray in question was unfit for its known or ordinary purpose, nor does she provide any evidence that her alleged injuries were caused by the tray being unfit for its purpose.  In fact, Walters all but deserts her breach of warranty claim by not once referencing it in her Opposition, and by conceding at oral argument that, in all likelihood, only a CPLA claim under a negligence theory can be maintained.[5]  See Pl.'s Opp. to Mot. for Summary Judgment.  Walters has not "set forth specific facts showing that there is a genuine issue for trial" with respect to her breach of warranty cause of action.  Thus, Howmedica's Motion for

---

[5]  Additionally, Walters fails to identify any genuine issues of material fact as to her breach of warranty claim as required by Local Rule 56(a).  See L. R. 56(a)(2) Stmt.

Summary Judgment is granted as to the breach of warranty basis for her CPLA claim. Anderson, 477 U.S. at 255.

     E.     Walters' Claim for Attorney's Fees and Punitive Damages

In Count Three of her Complaint, Walters seeks punitive damages because her injuries "are the result of the Defendant's reckless disregard for the safety of consumers . . . ." Cmplt. at 10-11.[6]  Under Connecticut law, punitive damages may be awarded in products liability actions "if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product." CONN. GEN. STAT. § 52-240b.

Howmedica argues that summary judgment of Walters' claim for punitive damages is proper because Walters offers no evidence to support the conclusion that Howmedica acted with "reckless disregard."  See Defendant's Mot. for Summary Judgment at 18-19.  The court agrees.  There is no indication in the record whatsoever that Howmedica acted with reckless disregard.  Dr. Ochoa concluded that Howmedica developed trays that complied with regulatory and customer requirements.  See Ochoa Report at 8.  Furthermore, Howmedica has stated that they "have received no such complaints of any injury or occurrence involving injury as alleged in the plaintiff's Complaint."  Defendant's Response to Pl.'s First Set of Interrogatories, Mot. for Summary Judgment, Exh. C at ¶ 10.  There is therefore no indication that Howmedica has ignored a manifest problem in its surgical trays.

---

[6] While Walters styles this "claim" as a separate cause of action, it merely reasserts Count Two, adds an additional allegation of reckless disregard, and seeks heightened damages.  Cmplt. at 10. Although this is not a separate cause of action, the court will address this claim for heightened damages separately because Walters asserted it as a separate claim in her Complaint.

In its response to Howmedica's Motion for Summary Judgment, Walters does not reassert her claim for punitive damages.  See Pl.'s Opp. to Mot. for Summary Judgment. Furthermore, at oral argument, Walters concedes that it is unlikely that she would be able to maintain her claim for punitive damages.  Because Walters has not demonstrated a genuine issue of material fact as to whether "the harm suffered was the result of the product seller's reckless disregard for the safety of product users," Howmedica's Motion for Summary Judgment as to the claim for punitive damages is granted.  CONN. GEN. STAT. § 52-240b.

In her Complaint, Walters also seeks attorney's fees.  See Cmplt. at 11. Connecticut law provides that, in a products liability action, if "the court determines that the claim or defense is frivolous, the court may award reasonable attorney's fees to the prevailing party."  CONN. GEN. STAT. § 52-240a.  Howmedica's defense is plainly not frivolous, and Walters is therefore not entitled to attorney's fees.  Howmedica's Motion for Summary Judgment as to this claim is granted.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment [Doc. No. 81] is **GRANTED**.  The Clerk is ordered to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 14th day of December, 2009.


        /s/ Janet C. Hall
Janet C. Hall
United States District Judge


-21-